# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ROBERT W. KINGSLEY,**

        **Plaintiff,**

**v.**                                            **No.  99cv0421 JP/JHG**

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Kingsley's) Motion to Reverse or Remand Administrative Decision, filed December 22, 1999.  The Commissioner of Social Security issued a final decision denying Kingsley's application for a period of disability, disability insurance benefits and supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

Kingsley, now fifty-five years old, filed his application for a period of disability, disability insurance benefits and supplemental security income on February 18, 1997, alleging disability since January 30, 1997, due to a seizure disorder.  On December 1, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Kingsley had a severe impairment or combination of impairments but retained the residual functional capacity(RFC) to return to the

work he performed in the past.  Kingsley filed a Request for Review of the decision by the

Appeals Council.  On February 19, 1999, the Appeals Council denied Kingsley's request for

review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the

Commissioner for judicial review purposes.  Kingsley seeks judicial review of the Commissioner's

final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the

Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is

not engaged in substantial gainful employment, he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities, and his impairment

2

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Kingsley makes the following arguments: (1) the ALJ failed to indicate an RFC for Kingsley; (2) the ALJ failed to follow Social Security Rule 96-3p regarding the evaluation of Kingsley's severe psychiatric impairment; (3) the ALJ failed to follow the dictates of Social Security Rule 96-6p regarding consultative opinions and documenting Kingsley's resulting restrictions; (4) the ALJ failed to accurately present a hypothetical with all of Kingsley's restrictions and as a result the opinion of the vocational expert is not accurate or reliable; and (5) the ALJ erred in failing to make accurate and appropriate credibility findings as required under Social Security Rule 96-7p.

In response, the Commissioner argues, *inter alia,* that review of these issues is barred because Kingsley failed to specifically raise them before the Appeals Council as required by *James v. Chater,* 96 F.3d 1341 (10th Cir. 1996).  In *James,* the Tenth Circuit held issues not brought to the attention of the Appeals Council on administrative review may be deemed waived on subsequent judicial review.  *James*, 96 F.3d at 1344.  *James* applies prospectively from September 19, 1996.  *Id.*  Kingsley filed his request for review on July 23, 1998.  Kingsley's request for review raised no specific points of error with regard to the ALJ's decision.  In addition, Kingsley was represented by counsel before the Appeals Council and during the administrative proceedings.  Tr. 4.  In light of the foregoing considerations, judicial review of the specific issues

is barred by *James.*  However, because the *James* opinion is on questionable footing in light of

*Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999), the Court will decide the case on the merits.  *See*

*Jones v. Apfel*, 202 F.3d 282, 2000 WL 3875 (10th Cir. Okla.)(unpublished opinion).

Kingsley claims the ALJ failed to assess and determine the RFC according to Social

Security Rule 96-8p.  Rule 96-8p states in pertinent part:

> 1.  Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

> 4.  The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c) and (d) of 20 C.F.R. § 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.
>
> * * * * * * * * * * * * * * * * * *
>
> **RFC AND SEQUENTIAL EVALUATION**

> At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy"  work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

SSR 96-8p, 1996 WL 374184, at *1 (SSA).  The ALJ specifically found Kingsley could perform

his past relevant work.  Tr. 12.  The ALJ relied on a vocational expert to assess and determine

whether Kingsley was able to do any of his past relevant work.  The vocational  expert testified

Kingsley could perform his past relevant work of laundry stock room worker and laborer in a

plastic factory.  Tr. 62.

　　　Before determining Kingsley could perform his past relevant work, the ALJ addressed

Kingsley's impairments.  Tr. 12-15.  The ALJ found the evidence supported a finding that

Kingsley had a seizure disorder, an impairment which caused significant vocationally relevant

limitations.  Tr. 13.  The ALJ further found Kingsley's heart murmur, hammer toe, joint pain,

depressive episodes and his history of learning disorder and peptic ulcers were impairments which

caused only minimal restrictions in Kingsley's ability to work.  *Id*.  The ALJ then concluded

Kingsley had no impairment which met the criteria of any of the listed impairments described in

Appendix 1 of the Regulations.  *Id*.

　　　These findings and conclusion are not supported by the evidence.  The ALJ focused on

Kingsley's grand mal seizures but failed to assess the impact of Kingsley's petit mal seizure on his

ability to work.  The ALJ failed to adequately evaluate whether Kingsley's petit mal seizure met

listed impairment 11.03 of Appendix 1.  Section 11.03 addresses petit mal seizures.  Kingsley's

sister, with whom he lives, testified she witnessed Kingsley having daily petit mal seizures, usually

in the morning.  Tr. 58-59.  Kingsley also testified that after the doctor increased his medication

he was experiencing petit mal seizures "not very often, but usually during the day two or three

occasionally."  Tr. 50.  Kingsley also reported having "small seizures every day, but he [was]

usually able to cope with those."  Tr. 180.  Kingsley also testified at the hearing that "the little

ones I can kind of control."  Tr. 49.  He  referred to getting dizzy and needing periods of rest

after these dizzy spells.  Tr. 50.  On September 19, 1998, Kingsley reported he was having about

"three petit mal seizures a day which take the form of 'dizzy spells' lasting about five minutes each."  Tr. 168.  It is not clear from the record whether Kingsley has petit mal seizures daily since the focus was on his grand mal seizures.  This could have an impact on the ALJ's determination of disability.  Additionally, Kingsley complained of tingling in his hands.  Dr. Paula Hughson, the consultative psychiatrist, diagnosed him with "history consistent with peripheral neuropathy."  Tr. 208.  This neurological finding may impact the types of jobs Kingsley can perform.

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993).  On remand, the ALJ should further evaluate Kingsley's petit mal seizures and peripheral neuropathy and order a consultative neurological examination and EEG if necessary.

In his December 1, 1998 Decision, the ALJ found that, although Kingsley had "history of depressive episodes and a history of learning disabilities," they were impairments which caused minimal restrictions in Kingsley's ability to work.  Tr. 17.  This conclusion is not supported by the record.   Under 20 C.F.R. § 404.1545(c), in determining a claimant's RFC, the ALJ must assess the claimant's mental abilities.  Section 404.1545(c) states in pertinent part:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c).  In this case, the record reflects Kingsley has problems understanding, remembering and carrying out instructions.  Tr. 58, 165.  In her assessment, Dr. Paula Hughson

6

indicated Kingsley has a "Global Assessment of functioning at present is 50 with serious
impairment in social, occupational and school functioning; in the past year, probably the same."
Tr. 208.  Mr. Williams, the vocational consultant, reported this indicated an inability to keep a
job.  Tr. 171.  Additionally, Dr. Hughson determined Kingsley "could probably perform some not
too strenuous, not too complex work, under well-structured, low pressure, conditions, at least **on
a part-time basis**."  Tr. 207 (emphasis added).  Dr. Hughsons' assessment indicates Kingsley had
restrictions or impairments that would preclude full-time.  On remand, the ALJ must consider the
record as a whole and not dismiss evidence favorable to Kingsley.

Kingsley also argues the ALJ failed to make appropriate credibility findings.  The Court
agrees.  Credibility determinations are peculiarly the province of the finder of fact and will not be
upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*,
898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and
affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."
*Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).   In his decision, the ALJ stated,
"Neither Mr. Kingsley's nor his sister's statements concerning his impairment and its impact on
his ability to work are entirely credible."  Tr. 15.  On remand, the ALJ should link his credibility
determination with specific evidence of record.  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.
1998).

**RECOMMENDED DISPOSITION**

The ALJ did not apply correct legal standards and his decision is not supported by

7

substantial evidence.  Kingsley's Motion to Reverse or Remand Administrative decision, filed

December 22, 1999, should be granted.  This case should be remanded to the Commissioner to

allow the ALJ to further evaluate Kingsley's petit mal seizures and peripheral neuropathy and

order a consultative neurological examination and EEG if necessary.  The ALJ should also

reassess Kingsley's physical and mental abilities when determining his RFC.  Finally, the ALJ

should link his credibility determination with specific evidence of record.


**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE

Within ten days after a party is served with a copy of these proposed findings and

recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written

objections to such proposed findings and recommended disposition. A party must file any

objections within the ten day period allowed if that party wants to have appellate review of the

proposed findings and recommended disposition. If no objections are filed, no appellate review

will be allowed.